## James Gardiner *v.* Oliver H. Bair, Appellant.

*Landlord and tenant—Alleged surrender—Burden of proof.*

A surrender of demised premises, in order to be effectual to release a tenant from payment of rent, must be accepted by the lessor and the burden of proof is upon the lessee.

A tenant for years cannot relieve himself from his liabilities under his covenant to pay rent by vacating the demised premises and sending the keys to the landlord.

*Landlord and tenant—Exercise of option by tenant—Covenants for notice.*

Where the purpose of a covenant is to put the landlord and the tenant on equal footing so that the former should know a reasonable time before the end of the year whether he must seek another tenant and the tenant should know whether he must seek another habitation it becomes essential that the tenant should give the landlord the stipulated notice in order to relieve him from liability for the ensuing year; but when the lease gave an option for four years at a progressive rental, a notice of less than three months is sufficient to save the tenant from liability of implied acceptance of such option for four years although it may not relieve his liability for the ensuing year, as a tenant from year to year.

Argued Oct. 4, 1898. Appeal, No. 26, Oct. T., 1898, by defendant, from judgment of C. P. No. 3, Phila. Co., June T., 1893, No. 620, on verdict for plaintiff. Before RICE, P. J., ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by W. D. PORTER, J.

Assumpsit. Before McMICHAEL, J.

It appears from the evidence that the defendant, lessee of certain premises, vacated the same at the end of the first year, to wit: August 31, 1892, having, as he claimed, given notice to the plaintiff, lessor, in accordance with certain covenants in the

lease, of his intention so to do on June 1, 1892. There was evidence tending to show that this notice was not received until June 15, 1892. There was some controversy whether the keys were delivered on August 31, or September 6. By the terms of the lease tenant agreed to pay $40.00 a month for the first year with the privilege of four additional years at the rent of $540 per year for the first year and $600 per annum for the three years remaining. There was a covenant for three months' written notice of intended termination on either side. There was evidence tending to show that on the 15th of June, attorney for the lessor received a written notice dated May 31, 1892, as follows : " Dear Sir : This is to give you legal notice (as per terms of lease of premises Eighteenth and Wharton Streets) that I desire to surrender the lease of premises northeast corner Eighteenth and Wharton on August 31, and vacate the premises. (Signed) Oliver H. Bair, per M. H. W." On February 1, 1893, plaintiff succeeded in renting the house at $40.00 a month and suit was brought to recover the sum of $495, being eleven months' rent at $45.00 per month, accruing after the vacation of the premises leased, less a credit of $240, being six months' rent at $40.00 per month, received from the new tenant, and the balance claimed was $255 and the sum of $80.00 damages to the building caused by the defendant while the tenant. The defendant claimed in addition to the effect of the notice given that the lease to him was for one year with the privilege on his part of renewing it for four years more, and that he had a right to vacate at the end of the first year without notice.

Defendant presented the following points, which were refused by the court :

[1. Under the lease in suit the defendant had a right to vacate the premises leased at the expiration of the first year without giving the plaintiff lessor any notice of his intention to vacate.] [3]

[2. If notice of defendant's intention to vacate was necessary, the notice given was ample and filled every legal requirement.] [4]

[3. If the jury believe that the plaintiff accepted the keys without any qualification, the verdict as to rent must be for the defendant.] [5]

The court charged the jury in part as follows:

[The second question of fact that you will have to determine is, Was there a surrender of the lease? And in order that there should be a surrender, it is not enough that the tenant gives up the keys, nor is it enough that the landlord takes the keys.] [1]

The tenant must give up the term, and the landlord, or his agent on his behalf, must accept the surrender of the term. And this is a question of fact which I will leave to you under the evidence, Did the landlord accept the surrender of the term? You have heard the testimony of Mr. Taylor, the agent of the landlord, that he declined to accept it. I leave that as a question of fact for you to determine. . . .

[After a pretty careful consideration of this lease, I have reached the conclusion (and the construction of a written document is for me and not for you), that if you reach the conclusion that the notice was not given in time, and there was no surrender, you should assess the damages at $40.00 a month for the year. This is not an easy contract to construe. Sometimes scriveners put in these papers ambiguous expressions, and it is a difficult question for the court to determine what is meant. The conclusion that I have reached is, that this is a lease for a term of one year, and there is also a covenant that either party may determine this lease at the end of said term by giving the other notice thereof, at least three months prior thereto, but in default of such notice, this lease shall continue upon the same terms and conditions as are herein contained, for a further period of one year, and so on from year to year unless or until terminated by either party hereto giving to the other three months' notice for removal, prior to the expiration of the then current term. That is, the tenant is not bound under the law to give notice of removal, although the landlord is, in order to obtain possession. But if he does not give notice when he has specially covenanted so to do, he is bound by his covenant. Men who are sui juris, are presumed to know what they are doing, and may make contracts which will be binding upon them. So that the tenant had a right to make this contract and did make a contract to that effect, that if he did not give three months' notice before the expiration of the lease, the lease should continue for a further period of one year, and

so on from year to year.  And from year to year merely means that he was to renew the same covenant from year to year. With regard to the privilege of four additional years at $540, my opinion is that that was a privilege that was not accepted by the tenant, and may be treated as out of the case.  There may be other methods of construing this lease, but that seems to me to be a simple and business-like way to look at it.  They make a lease for one year, and if neither the landlord nor the tenant gave notice three months prior to the expiration of the year, the lease was to continue from year to year.  But then they stuck in that the tenant was to have the privilege of the four years additional, and the landlord was to have the additional rent.  My idea is, that the only thing to say is, that the option was not taken advantage of by either party.  And that that simplifies the case for you, because that leaves the simple question of fact for you to determine.] [2]

Verdict and judgment for plaintiff for $341.  Defendant appealed.

*Errors assigned* were (1, 2) to portions of the judge's charge, reciting same.  (3–5) Declining defendant's first, second and third points, reciting same.

*Isaac D. Yocum,* for appellant.—The lease was for the term of one year, with the privilege of an additional term of four years.  That the lessee under such a lease had a right to vacate the premises leased at the end of the first year without giving notice has been decided in MacGregor v. Rawle, 57 Pa. 184, Wilcox v. Montour Co., 147 Pa. 540, Ashhurst v. Phonograph Co., 166 Pa. 357, and Cairns v. Llewellyn, 2 Pa. Superior Ct. 599.

It is contended on behalf of the appellant that there is no conflict between the two clauses, and that the lease can be interpreted so as to give full effect to both clauses.

Let us glance at the two clauses in question to see if they do conflict with each other.  The written clause provides for a lease for " the term of one year with the privilege of four additional years."  Under this clause the lessee had a right to stay one year, with the right of four years more.

That the trial judge was wrong in holding that this lease was

a lease from year to year, and in not holding that it was a lease for the term of one or five years, without right on the part of either party to vary it, by notice, and thus change it into a lease from year to year, has been clearly decided by this court in a suit in which the facts are identical with the facts in this case, and in which the printed form of lease used is word for word exactly the same as in this case. The case referred to is Lipper v. Bouvé, 6 Pa. Superior Ct. 452.

*Bradbury Bedell,* for appellee.—Nothing better is settled in Pennsylvania than that a tenant for years cannot relieve himself from his liability under his covenant to pay rent by vacating the demised premises during the term and sending the key to his landlord : Reeves v. McComeskey, 168 Pa. 571; Lane v. Nelson, 167 Pa. 602.

It has too often been decided that to establish a surrender of a term the burden is upon the one asserting it to establish the fact by a clear and explicit agreement, and the landlord's acceptance of the surrender also must be established by a fair and full preponderance of evidence : Rohbock v. McCargo, 6 Pa. Superior Ct. 134; Lipper v. Bouvé, 6 Pa. Superior Ct. 452.

Striking out the option clause which the appellant says he declined to exercise by his notice given June 15, then this case comes directly within the rulings of the Supreme Court in the case of Wilcox v. Iron and Steel Co., 147 Pa. 540.

From the inception of this action it has been contended by appellee that the lease in question was a lease for one year; that the lessee had the right to exercise his option for the four additional years, and that the lessor could not deprive him of that right. If this option had been exercised, the lease at once became a lease for an additional term of four years, or for an original term of five years. That if the notice of June 15, 1892, was to be considered as a refusal to exercise the option on the part of the lessee, then the clause relating to the option was read out of the lease. A notice by the lessor, prior to the end of the original term, would prevent the lessee under any circumstances from remaining over as a tenant from year to year, and would force him to become a tenant for the additional four years if he held over after the expiration of the first year; that a notice from the lessee prior to the termination of the first

year, and a vacating at the end of the year, would determine the tenancy; that in the absence of any notice a holding over would render the lessee a tenant for an additional four years, and that thereafter in default of notice a tenancy from year to year would arise.

This construction, it is respectfully submitted, is in accordance with all of the decisions, and removes all the "conflict" so often referred to in appellant's paper-book.

No other construction can be found which will render the lease logical and consistent in all its parts, written and printed, and therefore this is the construction called for by Judge RICE and affirmed by the Supreme Court in the case of Lane v. Nelson, 167 Pa. 602.

OPINION BY W. D. PORTER, J., March 23, 1899:

The plaintiff leased to the defendant a store and dwelling, "for the term of one year from the first day of September, A. D. 1891, at the rent of $480 per annum, with the privilege of four additional years at the rent of $540 per annum for the first year and $600 per annum for the three remaining years, to be paid in equal monthly portions in advance." In addition to other covenants the lease contained the following, viz: "And it is hereby mutually agreed, that either party hereto may determine this lease at the end of said term by giving the other notice thereof, at least three months prior thereto, but in default of such notice, this lease shall continue upon the same terms and conditions as are herein contained, for a further period of one year and so on from year to year unless or until terminated by either party hereto giving the other three months' notice for removal previous to the expiration of the then current term." The defendant went into possession under this lease and continued to occupy the premises until August 31, 1892, when he moved out, having paid the rent up to that time. The premises remained unoccupied until February, 1893, at which time the plaintiff secured another tenant at the same rental which defendant had paid during the preceding year. The plaintiff brought this action to recover for injury to the building done by defendant and for rent during the time that the property was unoccupied after defendants' removal. Plaintiff recovered a verdict upon which judgment was entered, whereupon defend-

ant appealed and the rulings of the court upon the trial are now assigned for error.

The first and fifth assignments of error relate to the oral charge of the court and the answer to one of defendant's points upon the question of alleged surrender by the tenant and acceptance by the landlord of the demised premises. The language of the court must be considered in connection with the testimony upon the subject to which it referred.

The only testimony offered in support of the alleged surrender was that of a clerk of the defendant. He swore that he took the keys of the building to plaintiff's agent, Taylor, who refused to take them; witness then went to the house of the plaintiff, rang the bell and, when plaintiff came to the door, handed him the keys in an envelope, said, " The keys of Eighteenth and Wharton," and walked away. There is no evidence that the landlord knew who this clerk was or from whom he came. The defendant contends that if the landlord received the keys without saying anything the tenant is relieved from payment of rent. The learned judge charged the jury in these words: " The second question of fact that you will have to determine is, Was there a surrender of the lease? And in order that there should be a surrender, it is not enough that the tenant gives up the keys, nor is it enough that the landlord takes the keys. The tenant must give up the term, and the landlord, or his agent on his behalf, must accept the surrender of the term. And that is a question of fact, which I leave to you under the evidence. Did the landlord accept the surrender of the term?" This instruction was as favorable as the defendant had any right to expect. A surrender of demised premises, in order to be effectual to release a tenant from payment of rent, must be accepted by the lessor and the burden of proof is upon the lessee: Lipper v. Bouvé, 6 Pa. Superior Ct. 452; Lane v. Nelson, 167 Pa. 602. " Nothing is better settled in Pennsylvania than that a tenant for years cannot relieve himself from his liability under his covenant to pay rent by vacating the demised premises during the term, and sending the key to his landlord," said Mr. Justice PAXSON, in Auer v. Penn, 99 Pa. 370.

The second, third and fourth assignments relate to the construction which the court put upon the covenants of the lease and raise but a single question. Could the lessee escape lia-

bility, under the terms of the lease, for a second year, by vacating the premises at the end of the first year, without having given three months' notice of his intention to terminate the tenancy? The only clauses of the lease involved in the consideration of this question are the granting clause and that providing, that, in default of three months' notice, by either party, previous to the expiration of the then current term the lease should continue, upon the same terms and conditions, for a further period of one year and so on from year to year. The grant was for the term of one year at the rent of $480 per annum, with the privilege in the lessee to extend this term four additional years at an increased rent; the clause requiring notice three months previous to the end of the term, in order to avoid liability for an additional year, did not curtail the right of the tenant to exercise his option to retain the premises for four full additional years, and these clauses are not repugnant to each other.

The term created by the lease was one year from September 1, 1891, for that period both landlord and tenant were bound, and, while it is true, that it was within the power of the lessee to extend the term, yet until there was an acceptance by him of the additional term, or a holding over, the term created by the lease ended with the first year: Cairns v. Llewellyn, 2 Pa. Superior Ct. 599; McClelland v. Rush, 150 Pa. 57. If under the lease in question neither of the parties had given notices and the lessee had simply continued to occupy the premises, after the expiration of the first year, he would, in the absence of further evidence, have been held to have exercised his option to accept the full additional term of four years, upon the ground that such holding over was notice to the landlord that the lessee elected to exercise his privilege: Lipper v. Bouvé, supra; Harding v. Seeley, 148 Pa. 20. But the defendant had, on June 15, 1892, notified the plaintiff that he declined to accept the additional term of four years and that notice was in time to save him from incurring liability for the term of four years at the increased rent. That notice put an end to the option of defendant to extend the term, which remained as created by the lease. Under the terms of the lease the defendant was not compelled to accept or reject the additional term of four years until the expiration of the original one year term; but if he

failed to give the landlord notice of his intended removal three months before the end of the original term his liability for the following year, under the covenant with regard to notice is a different question. If the defendant had given three months' notice of intended removal his liability would have ended with the first year. If the plaintiff had given such notice, the result would have been to force the defendant to make his election; he must have removed at the end of the original term or have accepted the additional term of four years. As was said by Judge RICE, in reference to a covenant in the very words of that with regard to notice in the lease, " Undoubtedly one purpose of this covenant was to put the landlord and the tenant on equal footing, so that the former should know a reasonable time before the end of the year whether he must seek another tenant, and the tenant should know whether he must seek another habitation :" Lane v. Nelson, 167 Pa. 602.

The defendant covenanted that, in default of notice to the plaintiff three months prior to the end of the term, he should be bound by the terms of the lease for a further period of one year. The jury have found that defendant did not give such notice. When it was too late the agent of defendant did attempt to give notice, which was received under protest. Under his contract the defendant is liable: Wilcox v. Montour Iron Co., 147 Pa. 540.

The defendant has no grounds for complaint against the rulings of the learned judge of the court below.

Judgment affirmed.